**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| HEXIN HOLDING LIMITED,<br><br>Plaintiff,<br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Case No. 26-cv-03877<br><br>Judge Jorge L. Alonso<br><br>Magistrate Judge Jeannice W. Appenteng |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY**

Plaintiff Hexin Holding Limited ("Plaintiff") hereby submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

## TABLE OF CONTENTS


**MEMORANDUM OF LAW** .......... 1

**I. INTRODUCTION** .......... 1

**II. STATEMENT OF FACTS** .......... 2

**A. Plaintiff's Copyrights** .......... 2

**B. Defendants' Unlawful Activities** .......... 3

**III. ARGUMENT** .......... 3

**A. Standard for Temporary Restraining Order and Preliminary Injunction** .......... 5

**B. Plaintiff Is Likely to Succeed on the Merits** .......... 5

**C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief** .......... 6

**D. The Balance of Harm Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction** .......... 9

**IV. THE EQUITABLE RELIEF IS APPROPRIATE** .......... 10

**A. A Temporary Restraining Order Without Notice is Appropriate and Necessary to Combat Unique Circumstances of Offshore Internet Infringement** .......... 10

**B. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Hexin Copyrights is Appropriate** .......... 12

**C. Preventing the Fraudulent Transfer of Assets Is Appropriate** .......... 12

**D. Plaintiff Is Entitled to Expedited Discovery** .......... 13

**CONCLUSION** .......... 14

**MEMORANDUM OF LAW**

## I. INTRODUCTION

Plaintiff seeks *ex parte* injunctive relief in this underlying action based on an action for copyright infringement against the defendants identified on Schedule A to the Complaint (collectively, "Defendants"). Plaintiff's allegations include those that Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling shapewears bearing infringing versions of Plaintiff's copyrighted photographs without authorization or license (the "Infringing Products") through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in the Schedule A.

Plaintiff's request for injunctive relief applies only to those Defendants identified in the accompanying proposed Temporary Restraining Order. Plaintiff has confirmed that, among the fifty-five (55) Defendants, seventeen (17) Defendants have offered to sell, sold, and shipped Infringing Products into this Judicial District within the last two months, the remaining Defendants have offered to sell, sold, and shipped Infringing Products into this Judicial District within the last four months, and that the listings of Infringing Products by the remaining Defendants have been active within at least the last two months. *See* Declaration of Faye Yifei Deng ("Deng Decl.") at ¶ 10.

Defendants run a sophisticated intellectual property misappropriation operation and directly target the sales of their products to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase the Infringing Products. The e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking

[1] The e-commerce store URLs are listed on the Schedule A to the Complaint under the Online Marketplaces.

of their operation. Plaintiff is forced into this action to combat Defendants' infringement of its copyrights, as well as to protect unknowing consumers from purchasing Infringing Products. Accordingly, Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue a temporary restraining order, including a temporary injunction, a temporary asset restraint, and expedited discovery.

## II. STATEMENT OF FACTS

### A. Plaintiff's Copyrights

Plaintiff is a prominent designer, manufacturer, and seller of shapewear products for women and distributes its shapewears through the U.S. and the world and built direct-to-consumer global brands. *See* Declaration of Juan Yang (the "Yang Declaration") at ¶ 3. Specifically, Plaintiff offers styles that make women look and feel confident and aims to build movements around confidence, body positivity messages, and women empowerment. Plaintiff's products have changed the shapewear industry. *Id.* Plaintiff is consistently ranked as top seller on online ecommerce platforms. *Id.*

Many of Plaintiff's copyrighted works are registered with the United States Copyright Office under registration numbers VA 2-425-485, VA 2-432-905, VA 2-403-287, VA 2-412-761, VA 2-431-239, and VA 2-477-750 ("Hexin Copyrights"). *Id.* at ¶ 4. The U.S. registrations for the Hexin Copyrights are valid, subsisting, in full force and effect. *Id.* The registrations for Hexin Copyrights constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use its federally protected intellectual properties. Plaintiff has continuously used Hexin Copyrights in interstate commerce in connection with the offering for sale, selling, distributing, and promoting of its shapewear products ("Hexin Products"). *Id.* at ¶ 5. The copyrighted photographs are an indicator of Hexin Products and its brands ShapeLLX and FeelingGirl as the source and origin of its shapewear products. *Id.*

Genuine Hexin Products are distributed and sold to consumers through authorized retailers throughout the world, including the United States. *Id.* Hexin Products are among the most popular of their kind in the world. *Id.*

**B. Defendants' Unlawful Activities**

The success of Hexin Products has resulted in significant theft resulting in economic and irreparable harm to its brand image of ShapeLLX and FeelinGirl and its business. *Id.* at ¶ 7. Defendants advertise their shapewears using direct copies or derivative copies of Hexin Copyrights to mislead the public that Defendants' products emanate from the Plaintiff. *Id.* at ¶¶ 8, 9, 10. Plaintiff regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reports by consumers. *Id.* at ¶ 8. Recently, Plaintiff has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which are offering for sale and selling Infringing Products to consumers in this Judicial District and throughout the United States. *Id.* at ¶¶ 8, 9.

Defendants' infringing use of Hexin Copyrights in connection with the advertising, distributing, offering for sale, and sale of the Infringing Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff's reputation, brand image, and business.

**III. ARGUMENT**

Defendants' purposeful, intentional, and unlawful conduct is causing and continues to cause irreparable harm to Plaintiff's reputation and goodwill associated with Hexin Copyrights. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop Defendants from benefiting from the unauthorized

and infringing use of Hexin Copyrights to market and sell shapewears and preserve the status quo until a hearing can be held.

Without a temporary restraining order in place, the Defendants can and will likely register new e-commerce stores under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. *See* Declaration of Faye Yifei Deng (the "Deng Declaration") at ¶¶ 5-9. Courts have recognized that civil actions against counterfeiters and intellectual property theft present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise is often useless if notice is given to infringers"). As such, Plaintiff respectfully requests that this Court issue the requested injunctive relief.

This Court has original subject matter jurisdiction over the claims in the action pursuant to 17 U.S.C. § 501, *et seq*., 28 U.S.C §§1338(a)-(b) and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants target their business activities towards consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S., dollars， and have offered for sale and sold Infringing Products to residents of Illinois. *See* Complaint at ¶¶ 2, 14, 15, 29, 34. *See NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624-627 (7th Cir. 2022); *see, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois, no actual sale required). Each of the Defendants

is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g., Charter Nat'l Bank & Trust v. Charter One Fin., Inc.,* No. 1:01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these conditions have been met, then it must consider the harm that the nonmoving party will suffer if a preliminary injunction is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. V. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

### B. Plaintiff Is Likely to Succeed on the Merits

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright". 17 U.S.C. § 501. Among these exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of and display the Hexin Copyrights to the public. 17 U.S.C. § 106.

In order for a plaintiff to win a claim of copyright infringement, the plaintiff must show: (1) ownership of a valid copyright, and (2) copying of original elements of the copyrighted work. *Spinmaster, Ltd.* v. *Overbreak LLC*, 404 F. Supp 2d 1097, 1102 (N.D. Ill. 2005). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Id.* at 1103. Substantial similarity consists of two questions: (1) whether the defendant copied the plaintiff's work, and (2) whether the copying constitutes an improper appropriation. *Id.*

With respect to the first element, Plaintiff is the owner of Hexin Copyrights. As to the second element, Defendants are willfully and deliberately reproducing Hexin Copyrights in their entirety and are offering for sale and selling shapewears using Hexin Copyrights without authorization. Defendants' infringing copies are identical or substantially similar to Hexin Copyrights and embody the total concept of Hexin Copyrights. Such blatant copying infringes upon Plaintiff's exclusive rights under 17 U.S.C. § 106. As such, Plaintiff has proved that it has a reasonable likelihood of success on the merits for its copyright infringement claim.

### C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief

In copyright infringement cases, the Seventh Circuit has held that an injury transforms into an irreparable injury when it is difficult to ascertain what business has been or will be lost. *Lift Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979); *see Roadget Bus. PTE. LTD v. PDD Holdings Inc.*, 2023 U.S. LEXIS 131974, at *31(N.D. Ill. July 31, 2023) (holding, in copyright case, "the alleged infringing activity occurred on an online platform … the harm is unquantifiable and not easily identifiable").

Irreparable harm resulting from copyright infringement is demonstrated when "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011). At this stage, Plaintiff only needs to show that irreparable harm is likely. *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, Plaintiff is likely to suffer four primary forms of irreparable harm: (1) loss of consumer goodwill, (2) reputational harm, (3) loss of future business, and (4) loss of consumer confidence in ShapeLLX and FeelinGirl brands. Yang Decl. at ¶¶ 16-21. Each of these harms, independently, constitutes irreparable harm and offers a basis on which an injunctive relief should issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quote and cites omitted).

Defendants' infringement erodes and devalues Plaintiff's rights in the Hexin Copyrights, thereby risking injury to Plaintiff's goodwill, reputation, its business plan development, its brands, and interfering with Plaintiff's ability to exploit its intellectual property rights. Yang Decl. at ¶¶ 16-21. *See, e.g., Otter Prods. v. Anke Group Indus. Ltd.*, 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (explaining that absent the requested TRO, plaintiff were likely to suffer "irreparable injury…in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents."); *see also Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ("Absent an *ex parte* temporary restraining order and seizure order, Bestwinn's importation, sale, and/or offers to sell its Flyknit Design Infringements will result in immediate and irreparable injury to NIKE in the

form of loss of control over its valuable intellectual property rights, loss of consumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patents.").

Defendants' infringement of the Hexin Copyrights is likely to cause consumer confusion with genuine Hexin Products, resulting in harm to Plaintiff's reputation and loss of customers' goodwill in its brands, as well as loss of future business. Yang Decl. at ¶¶ 16-21. As established by the Federal Circuit: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994); *see also Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) (quoting and relying on Reebok in finding irreparable harm).

A causal nexus exists between Defendants' infringement and each of the irreparable harms that Plaintiff is suffering. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here, Defendants' infringing use of the Hexin Copyrights is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), aff'd, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

Finally, because Defendants are individuals and businesses who, upon information and belief, reside in foreign jurisdictions with no U.S. presence, any monetary judgment is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2*

*Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"). Furthermore, other district courts have found that money damages were insufficient in similar cases involving foreign infringers. *E.g., Aevoe Corp. v. AE Tech Co., Ltd.*, No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Otter Prods.*, 2013 WL 5910882, at *2 ("because Anke has no presence in the United States, it may be difficult or impossible for Otterbox to enforce a monetary judgment against Anke"); *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Nike, Inc.* 166 F.Supp.3d, at 1179 ("[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgment against Bestwinn").

For the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Yang Decl. at ¶ 21.

### D. The Balance of Harm Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must consider the harm Defendants will suffer if the requested preliminary relief herein is granted, balancing such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F. 3d at 895. According to the Federal Circuit Court of Appeals, it is axiomatic that an infringer cannot complain about the loss of ability to offer its infringing product.

*LEGO v. ZURU Inc.*, 799 F. App'x 823 (Fed. Cir. 2020). As willful infringers, Defendants are entitled to little equitable consideration. This is because any harm to Defendants that could possibly result from a temporary restraining order is self-inflicted. Defendants took a calculated risk when they engaged in infringement. Under such circumstances, courts refuse to assign any "harm" to the defendant because it assumed the risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F. 3d 922, 931 (Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent"). The Seventh Circuit has held that public interest is served from injunctive relief, since it "preserves the integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights." *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 620 (7th Cir. 1982).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with Plaintiff's approval. In this case, the injury to the public is significant, and the injunctive relief Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their current unlawful conduct.

## IV. THE EQUITABLE RELIEF IS APPROPRIATE

Any court having jurisdiction of a civil action for copyright infringement may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright. 17 U.S.C. § 502(a).

### A. A Temporary Restraining Order Without Notice is Appropriate and Necessary to Combat Unique Circumstances of Offshore Internet Infringement

An *ex parte* TRO is necessary and justified in this case given the unique circumstances of offshore e-commerce infringement. Courts have recognized that civil actions against infringers present

special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). Each Defendant is engaged in the inherently deceptive act of intellectual property infringement from outside the U.S. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 132-33 (2nd Cir. 2014) (confirming authority to issue TRO and preliminary injunction freezing assets of offshore defendants selling counterfeit goods online); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007 (affirming TRO and preliminary injunction freezing assets of defendants selling counterfeit goods); *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1990) ("Due to the international aspect of the defendants' business, the Court is concerned that unless the assets are frozen, defendants may hide their allegedly ill-gotten funds."), *aff'd*, 970 F.2d at 561 (9th Cir. 1992); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987-88 (11th Cir. 1995) (internal quotations omitted) (affirming a preliminary injunction freezing assets of U.S.-based defendants who arranged for making counterfeits in China). The Court should also consider actions taken by similarly situated defendants to evade court orders and/or move proceeds of infringing sales offshore. *In re Vuitton Et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979).

Plaintiff has submitted evidence showing that Defendants are selling Infringing Products and operate from China or other foreign jurisdictions. *See* Yang Decl. at ¶ 7. Defendants "take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's] trademarks with impunity." *Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511, 516 (N.D. Ill. 2020). Specifically, Plaintiff has established that Defendants operate offshore in China or other foreign jurisdictions. Yang Decl. at ¶ 8. Plaintiff has concurrently filed a declaration evidencing that infringers like Defendants may set up new e-commerce stores, and transfer proceeds of infringing sales to bank accounts outside the United States once they have

received notice of a lawsuit. Deng Decl. at ¶¶ 5-9. Defendants are likely aware that it would be "difficult if not impossible to enforce U.S. judgments in China." *In Re Cisco Systems Inc.*, 2020 U.S. Dist. LEXIS 158008 at *25; Deng Decl. at ¶ 11.

**B. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Hexin Copyrights is Appropriate**

Plaintiff requests a temporary injunction requiring Defendants to immediately cease offering for sale, selling, and promoting any Infringing Products. Such relief is necessary to stop the ongoing harm to Plaintiff's control over its rights in the Hexin Copyrights, its reputation, associated good will in its brands, and to prevent Defendants from continuing to benefit from their infringement activities. The need for *ex parte* relief is magnified in today's global economy where infringers and those who misappropriate intellectual property can operate anonymously over the Internet. Many courts have authorized immediate injunctive relief in similar cases involving the sale of infringing products. *See, e.g. Deckers Outdoor Corp. v. P'ships, et al.*, No. 13-cv-00167, 2013 U.S. Dist. LEXIS 47248, at *24 (N.D. Ill. Mar. 27, 2013).

**C. Preventing the Fraudulent Transfer of Assets Is Appropriate**

Plaintiff requests an *ex parte* restraint of Defendants' assets (e.g., Freeze of Assets) so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, on information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.,* 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its copyright

infringement claim. Plaintiff is entitled to recover Defendants' total profit. 17 U.S.C § 504(b). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for prejudgment asset freeze to preserve relief sought by Plaintiff.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano, de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered because of Defendants' activities, and that unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts over which U.S. courts do not have jurisdiction. Accordingly, an asset restraint is proper.

**D. Plaintiff Is Entitled to Expedited Discovery**

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain their merits." *Oppenheimer Fund, Inc. Sanders*, 437 U.S. 340, 351, 98 S. Ct 2380 (1978). Courts have a wide latitude in determining whether to grant a party's request for discovery. *Id.* (citations omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their fraudulent sales operation as well as physical and email addresses of Defendants. The expedited discovery requested in Plaintiff's proposed temporary restraining order is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests the Court allow Plaintiff to conduct expedited discovery.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or Preliminary Injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of copyright infringement, Plaintiff respectfully requests this Court require Plaintiff to post a bond of no more than fifty-five Thousand Dollars ($55,000) ($1,000 per defendant). *See e.g., Hexin Holding Limited v. The Partnerships and Unincorporated Associations Identified on Schedule A*, No. 25-cv-03743 (N.D. Ill. April 14, 2025) (unpublished) ($1,000 bond per defendant).

## CONCLUSION

Defendants' infringement activities are irreparably harming Plaintiff's business and consumers. Accordingly, Plaintiff respectfully requests that the Court grant this Motion and enter an order granting the additional relief requested in the form of a temporary injunction, temporary asset restraint, expedited discovery, and any other additional relief as this Court deems equitable and appropriate.

Dated: April 13, 2026

Respectfully submitted,

*/s/ Faye Yifei Deng*
Faye Yifei Deng
YK Law LLP
445 S Figueroa Street, Suite 2280
Los Angeles, California 90071
Telephone: (213) 401-0970
Email: fdeng@yklaw.us

*Attorney for Plaintiff Hexin Holding Limited*